Mr. Walsh. Yes, ma'am. Please accord. I'm Joseph Walsh, the attorney for the appellant. This is an interlocutory appeal of the district court's order directed to a special magistrate to disclose and turn over the letters of the appellant that he wrote to his wife, to the prosecutors in this case, over the defendant's or the appellant's objection that they were privileged under the confidential marital communication privilege. The essential ruling of the district court that we're challenging is that the privilege is not a secrecy privilege, that it's only a litigation objection. We think that that ruling was in error and that, in fact, the confidential marital communication privilege is both a secrecy privilege and a litigation objection. The United States Supreme Court's major case in deciding this privilege, Wolf v. United States, stated that the communications between spouses privately made are generally assumed to have been intended to be confidential and are hence privileged. And if you look up the definition of the word confidential in the dictionary, it says the definition is secret and private. And so it seems as though the only reasonable interpretation of the privilege is that it's a privacy privilege involving keeping the secrets between husband and wife private. I understand that argument. Let me see to the degree that I can understand how this doesn't seem to be in the papers that I've read. What's the nature of the search warrant? I mean, they're going in, they're searching the wife's house, they discover these letters. What were they searching for? Well, the search warrant affidavit was under seal, but they were searching for evidence related to the RICO prosecution of the husband, the appellant in the case. And he's charged with participating in a RICO organization, which is a prison gang engaged in a pattern of racketeering activity. And so the warrant was trying to seek evidence in connection with that case. And the validity of that warrant, as I understand it, was not challenged? It has not been challenged yet. Well, for our purposes, we take it as valid. I believe so. I believe it was challenged by the wife in the district court in Omaha, Nebraska, and the challenges were overruled at that point in time. And these letters were seized as within the scope of the warrant? No, no, no. That was never litigated because the wife was an attorney. All of the letters were seized, but not read by the ATF officers that seized them. And a special master procedure was immediately implicated. I understand that. But the letters were picked up in the house. They were then handed over to the special master. The special master has excised things that in his view are within the attorney-client privilege. But the rest of the information is now what you're fighting about. That's correct. In fact, some of the letters were entirely attorney-client privilege. And that was the purpose. The main purpose of the special master was to protect the attorney-client privilege. A large number of the letters were deemed by the special master to only be partially covered by the attorney-client privilege, and the other part was not. So the special master was going to deliver those letters to the prosecutors. The appellant then objected that those parts of the letters were covered by the marital communication privilege, which was an objection raised by the wife, which was unsuccessful. But since the appellant had a greater interest because he was facing litigation, he pressed forward that objection to the special master and in the district court. I've looked very hard for cases that say that the marital communication privilege is anything other than an evidentiary privilege, that is to say, a privilege that prevents this from being introduced into a judicial sort of proceeding. Do you have any cases beyond this general language that say this is a confidential matter and it simply may be kept away from the government in all circumstances? Yes, there's two cases. One found by the government and cited in their brief. It's SEC v. Lavin, a District of Columbia Circuit case, where the husband and wife marital privilege was objected to the release of tape-recorded telephone call conversations between the husband and the wife, which the husband's employer had custody of. And during the litigation, the SEC wanted those conversations, and there was a successful objection based on the husband and wife privilege, which prevented the disclosure of those tape recordings. The other one is the California State case, which we cited in the opening brief of Rubio v. Superior Court, where in a criminal prosecution, the defendant SDT'd and subpoenaed a videotape of a child molestation victim's parents having sex on a videotape, and the California court held that that technically fell within a writing under California law. It was a marital communication, and that the privilege prevented the disclosure of that videotape. And so those are two cases where, and it was prevented under the confidential marital communication privilege. The question I have is, we have two discrete places where there may be some divergence, but in the Ninth Circuit, we have this Hoogle case. And then Judge Kennedy said at the conclusion of that case, privilege relates only to testimony in judicial or grand jury proceedings. It seems to me your challenge is to see if, is there any way that we are not bound by that fairly straightforward interpretation of the marital communication privilege? And it's the same argument I've been making all along. I believe that language is dicta and has to be looked at in terms of the facts of the case. The holding in Hoogle was that a district court may not issue a protective order preventing government investigators from talking to the wife of the defendant. That's right, but the reason was, the reason was that because the privilege doesn't extend that far, it seems to me essential to the holding of the case. Well, but the facts are totally different from this case because in Appellant's case, both the husband and wife are claiming the privilege and they're refusing to waive the secrecy. In Hughley, the husband was under criminal investigation and there was a likelihood that the wife would betray him and reveal confidential communication privilege. And there may be a waiver on the part of the wife. And we know from the United States version of this case … Well, it seems to me all the more policy why you'd want to say if there were a secrecy privilege, halt, because if there truly is a secrecy privilege, you can't have one side selling the other down the river. You can't, you can't do that in court. That's what United States v. Montgomery, the most recent Ninth Circuit case, says that if one spouse waives the privilege and talks, the police can listen. They can take that information. They can investigate on it. But when it comes time for court, then it becomes just a litigation objection. And in Montgomery, the husband, if he doesn't waive, then the wife can't testify. But it seems pretty clear from the case law and from the textbooks that the husband can't control a family member from revealing secrets out of court. And that's what was going on in the Hughley case. It's a situation where there was a potential waiver by the wife. And there's nothing wrong by law. In fact, in Lefkowitz v. United States, that's what happened. The wife provided information to the police that went into the search warrant affidavit. And then there was an objection. They didn't have to reach the issue whether the use in court was improper because it was immaterial to the granting of the warrant. But later in Montgomery, it's clear that judicial use of waived confidential communications cannot be used in court where there's a waiver of one's spouse. And that's what was going on in the Hughley case. Hughley's only remedy there when the wife waives the privilege and reveals the secrets is to object in court. And so the language in Hughley makes perfect sense under the facts of the Hughley case. But they make no sense in the case such as appellants, where both husband and wife are objecting under the confidentiality. They're objecting to the release of the information. And that's why we felt that the case of Blau v. United States was so instructive. And in that case, the husband was asked before a grand jury proceedings, where's your wife? We're looking for your wife in this criminal investigation. And he asserted the confidential marital communication privilege. And although it was within the context of making an objection to the admissibility of the evidence, in reality, the court was saying that these matters are secret. And because of the privilege, he wasn't required to reveal where his wife was because all parties agreed that he had learned through a confidential communication from his wife. His wife confidentially told him where he was. So it not only acted as a litigation objection in the Blau case, it also resulted in the matter – in the information remaining secret. The government wasn't entitled to receive that information. So the key distinction between the Hughley case and this case is when both clients refused to waive the privilege, when both clients urged the secrecy privilege, it has to be upheld. And it can't be – you can't force the revelation of the secrets when both clients are claiming the secrecy privilege. And that's both in court and out of court. And that's why the language in the Hughley – the Hughley decision makes perfect sense when there's a waiver by one spouse, but it makes no sense at all to the situation in Appellant's case where both spouses are claiming the privilege. Counsel, you're just about used up your time. Okay, I'll reserve whatever time I have. You have four seconds. We'll hear from the government. Good morning, Your Honors. Joey Blanche for the United States. I think Your Honors have actually really hit the nail on the head when you suggested that there simply is no case law specifically supporting the defendant's argument here. The defendant is actually seeking an expansion of the marital communications privilege, an expansion that this Court has never previously adopted. And this expansion is unwarranted in light of the settled policy that the marital communication privilege is to be narrowly construed. Let me ask you this. Assume for the moment that this SEC v. Lavin case, which is, of course, a D.C. Circuit case, is binding on us and is not inconsistent with Hughley. So simply looking at Lavin, how do you get a – see, the court in Lavin makes it very clear that there are two kinds of privilege. I'm just reading from the opinion. The federal common law recognizes two types of marital privileges. Number one, the privilege against adverse spousal testimony. That's the one that we've been focusing on as not involved here. And number two, the confidential marital communications privilege, which is not a testimonial privilege. The court then goes through several elements that it finds established in the common law that if you can satisfy them, it's a confidential marital privilege. And discovery of that communication cannot be compelled. Okay. Distinguish Lavin from this case. Your Honor, I have two responses. I think the first obvious response is this court is not bound. But I think you're right. It is difficult to distinguish SEC v. Lavin. The best argument I have distinguishing Lavin is that in that case, it doesn't appear from the opinion that either party really questioned whether the marital communications privilege actually applied to discovery. Rather, in granting discovery in the subpoena enforcement action, the court simply assumed without any discussion that the privilege applied to the production of the recordings. So it's true that in that case, the court stated that the confidential marital communication privilege may be asserted against the production of evidence. But it also doesn't appear that it was specifically argued by either side. There wasn't a lot of discussion in that. So you want to say it wasn't argued and all this talk by the judge saying, I mean, it's a very careful analysis by Judge Rogers on the decent verdict. That's true, Your Honor. But the only way you can think of to get around it is, well, but even though it was a careful analysis and seems to be a well-considered opinion, it wasn't argued to her and therefore it's not binding. I think that's correct, Your Honor. Oh, boy. I know. It doesn't get us very far. I admit that. I think our best argument is that that case is the only case we were able to find when we were searching for cases specifically on this issue that actually addressed it. And that case is not binding on this court. To the contrary, I think the best. We routinely disregard anything west east of the Mississippi. I appreciate that, Your Honor. There are lots of courts included in east of the Mississippi. That's true. For those of you who might be listening to this, that was a joke. Thank you, Your Honor. The government's best argument is that the best reading of the cases, particularly the cases that are binding on this court, and this court's own cases, like Hugel, state very clearly that the protective order, excuse me, in Hugel the court stated that the protective order sought by the appellant extended beyond grand jury compelled testimony. And it included the request that the government and its investigators be enjoined entirely from interrogating the wife. And the analysis of that court in determining that that protective order should not be granted, the court specifically said that the marital communications privilege relates only to testimony in judicial or grand jury proceedings, and our opinion is limited accordingly. That's a relatively clear statement. Now, I understand that the defendant's argument is that Hugel can be distinguished because in that case one of the spouses may have been attempting to waive the marital communications privilege, and in this case there is no waiver. However, the best reading of that case is the plain language of the opinion. Counsel, if we were just writing on a clean slate, what would be your reasoning to say that there's only one form of a privilege and it is a litigation privilege, in other words, to reject the reasoning that Judge Fletcher was reading to you earlier? I think the best argument for that is the balancing between the purpose of the marital privilege and the truth-seeking function of the courts. This court has stated that the purpose of the marital communications privilege is to protect the integrity of marriages and to ensure that spouses are able to communicate freely with each other. However, in Marashi, this court also said that the policies underlying the marital privilege pale in the face of public concerns about bringing criminals to justice. If you balance the interests of the marital communications privilege with the truth-seeking function of the court and the government's strong interest in bringing criminals to justice, then the long line of court cases which state that the marital communications privilege must be narrowly drawn and not expanded. Would you make the same argument for, say, the priest-penitent privilege, that if someone comes in and confesses a crime, it's more important to force the truth-seeking function? Well, first, Your Honor, I think it's unclear that the priest-penitent privilege is more than a secrecy privilege. I looked for cases regarding that, and I couldn't find anything specifically on point. On the other hand, I do think that the priest-penitent privilege is distinguishable from the marital communications privilege because, as the Court pointed out, there's two parts to the marital communications privilege. The first part that we're not dealing with is the testimonial privilege when a spouse is called to testify in court, and the second part is the marital communications privilege that we are dealing with with the letters. The courts have already found that the first part is waivable by one of the spouses. That's not the case, as far as I can tell, in the priest-penitent privilege. It's certainly not the case in the doctor-patient privilege. Well, it's waivable by the patient or by the penitent. But it is not waivable by the doctor or the priest or the attorney. The reasons for that would appear to be that if it were waivable, it would destroy that relationship, and the courts are even past the existence of that relationship. The privilege continues. In the marital communications context, after the marriage dissolves, there is no longer a testimonial privilege. That's the first part of the privilege, the one that conceitedly we're not dealing with. But it's the government's position that, in the context of the marital communications privilege, you can see from the way that the privilege has evolved, from the fact that it's waivable by one spouse when you're talking about testimony, from the fact that after the relationship is ended, there is no privilege for the testimonial privilege. Courts have been consistently narrowing that privilege in a way that you don't see in the priest-penitent privilege or in the doctor-patient privilege cases. And that's why I think the marital communications privilege is different. The courts have suggested over and over again that this is a very narrow privilege, that the courts should not be expanding. And in this case, I was unable to find any cases other than SEC v. Levin. I know the court stated that you were unable to find any cases. The district court also, in its opinion, stated that it was unable to find any cases that directly support the defendant's position, that it should be a secrecy privilege as opposed to merely a litigation privilege. In light of the fact that this is an expansion of the marital communications privilege from the current state of the law. Let me tell you where my initial instinct in this case is, which is why I'm finding this a troublesome case, or troublesome in the sense of I'm having trouble immediately agreeing with the government. For the government to execute a search warrant, search a house, seize letters that were obviously intended to be private between a husband and a wife, and then use information out of those letters in a way that's potentially very adverse to at least one and maybe both members of that marriage. There's something wrong with that. Now, something wrong with that in the sense of I just don't think that's what ought to be going on, and I'm looking around in the law to see whether my instinct as to what's wrong is borne out. Levin tells me that my instinct is okay. Do you want to justify sort of on the merits as distinct from on the doctrine? I mean, why should the government be allowed to do this? Well, for two reasons, Your Honor. If we're sticking specifically to the marital communications privilege argument. Correct. Sticking specifically to the marital communications. What policy reasons are there in favor of your position? Not doctrinal, but policy. Why is this a good idea? It's a good idea, Your Honor, because the defendant should not be allowed to use communications with his wife to conceal crimes. He shouldn't be allowed to talk about his crimes with his wife. Why not? Because, Your Honor, I find a very difficult time distinguishing. Yeah. Conceitedly, I'm not married, and maybe that makes a difference. But that's also a joke, Your Honor. I don't understand why a defendant or an accused in the crime should be able to give evidence to one person, whether it's to make himself feel better or simply to talk things out. Or to say, you know, I did this terrible thing, and I'm feeling very sorry, and how do I make amends? I don't really want to go to jail, but I'd like to give the money back. You think you should have that evidence? I think I should have that evidence, Your Honor. I don't think it makes any difference whether he's making that communication to his wife or he's making it to his cellmate or his buddy. Okay. All right. The second argument, Your Honor, which goes beyond simply the marital communications privilege, is the other argument that we addressed in our brief. Assuming that, Your Honors, find against the government on the first point. The second point that the government has made, which I think is very critical, is that the defendant is arguing that the marital communications privilege should be applied as a secrecy argument before there's been a decision made that the communications at issue are actually covered by the marital communications privilege. In fact, it's the government's position that those letters are not covered by the marital communications privilege for the simple fact that there is no reasonable expectation of privacy in communications between an inmate and his spouse. The only reason he has any expectation of privacy in these communications is because he improperly designated them attorney-client privileged information. And as the district court did not rule on that issue, but the special master did. And the special master determined that the communications at issue are not covered by the attorney-client privilege. Are there any of these letters in which there was no protected attorney-client information? I don't know, Your Honor. We have been unable to see them. Okay. So in the absence of knowing exactly what's in there, all I can tell you is that the special master specifically ruled that she had redacted the attorney-client privilege information out of the letters and everything else in the letters are not covered by the attorney-client privilege, which means they were sent by an inmate to his wife as spousal communications improperly designated as attorney-client privileged information. There is no question that under the regulations of the prison, only attorney-client privileged information can be sent using attorney-client confidential mail. The other regulations state that if you're communicating in any other capacity And the district judge didn't reach the question as to what the impact of that rule would be.  Well, we've exceeded your time, but we appreciate it. You've answered a lot of our questions and we appreciate that.  Mr. Walsh, although you ran out of time, you may have two minutes for rebuttal because some additional issues came up that you may want to mention. Yes, Your Honor. In addition to the language in the Hughley case, there's also language in the Ninth Circuit's Lefkowitz case, which says that the marital communication privilege prevents disclosure of confidential information. So that's the case involving the wife who waived it and gave it to the police and abused. What's your response to the second argument that in face of being an inmate subject to pre-existing rules that say, we will read all your mail except that which you send to your lawyer regarding your case,  Well, first of all, the district court didn't rule on that, but I recognize that the court can reach that issue. And our position all along is that there was no violation of state law, that California law is very clear under Penal Code Section 2601 in this California Supreme Court case of In re Jordan, that an inmate has a right to communicate with a lawyer in absolute privacy. It's forbidden to censor those communications, to listen in. There's a Penal Code Section 636B, which makes it a crime to eavesdrop upon the communications between a prisoner and a lawyer. That actually doesn't answer my question, though. Let's assume for the sake of my question that there is at least one letter that contains no attorney-client related matters that says, dear sweetheart, they think I'm writing to my lawyer, but it's just that I want to send you this love letter and confess all my crimes, and that it really isn't an attorney-client letter. Is there an expectation of privacy in an inmate's communication with a spouse in the face of a preexisting regulation that says it can be read? Well, I would think that the answer is yes. And the only test, really, is whether the communication was confidential. And since that communication was in an attorney-client marked envelope, it was not read. In fact, there's a factual finding that these letters were presumably not read by the prison because they were marked legal and confidential. So if an additional conversation like that is in the letter, that would not be a – there would have to be some compelling reason to say we're going to ignore the confidential marital communication. I'm going to just keep pushing you because I'm still not really getting you to focus on what's bothering me. Let's assume the same letter, but the spouse isn't a lawyer. The spouse is, you know, a window washer, and the letter goes out. Is there an expectation of privacy in that communication between the inmate and the spouse? Well, that would be different facts. I know. I'm asking what your answer is on those facts. There would be a lesser expectation of privacy because the prison would probably look up to see if that was actually a lawyer Leave the lawyer out of it. There's no lawyer in my example. The person is pro se. There's no lawyer. The person is just an inmate communicating with their window washer spouse by letter from inside the prison in the face of a regulation that says we can read your mail. Is there any expectation of privacy simply because the letter is going from the inmate to the spouse? No, there's no expectation of privacy in that situation. Okay. And, in fact, there were such letters in this case that were not covered by any privilege. They were read, and the marital privilege wouldn't apply there. But here we have a situation where Didn't you say there were such letters? There were other letters that were sent to his wife that he didn't put a stamp on? That's my understanding, yes, Your Honor. And we're not contesting those letters. We're only contesting the letters that were marked alternatively. So if that's true, then whatever the extent of the secrecy, in your view, that attaches to marital communications, it can't be absolute because you're already saying that there are some circumstances in which it gives way. We're not saying it's absolute. We're saying that when one spouse is a lawyer and the communications are sent through attorney-client legal mail, that confidentiality covers the entire conversation. So if there's some incidental non-legal matter discussed in that letter, it's still covered by the overarching privilege of confidentiality. And under Murashi, there's just a three-point test. And the key point we're talking about is whether the letter was read by a third party. And woefully, since it was read by a stenographer, the privilege was destroyed. In our case, it's clear-cut evidence. We have a factual finding that these letters were not read by any third party. So by a strict black-letter application of the privilege, it applies. And so now the government Let me stop you there. If you're correct, why do you need the spousal privilege at all? Because of the redaction process that was going on by the special master. Half of the letter is covered as attorney-client privilege, and then the master has made a determination, this is not attorney-client conversation. Collateral information. Yes. But within that collateral information, is that related to legal issues? The master has said no. Okay. So then the problem becomes, does he no longer have a marital communication privilege because the government now wants to read it because of a minor mail regulation violation? And that's where the problem becomes. Yeah, but if he'd written two letters instead of one, one on the legal matter and the other to talk about fixing the sprinkler system, then you've already said that the sprinkler system letter isn't Well, that sprinkler system letter in a separate envelope would have been read. And so the privilege would have been destroyed by the reading of the third party censor at the prison. The question is whether there's the right to have read it, I guess, in terms of the expectation of privacy question. Well, if there's the question right to have read it and for what purpose, that is to say, I think it may be a different proposition whether the prison reads it in order to figure out whether he's got escape plans compared to whether the government's now reading these letters, having seized them pursuant to a warrant, trying to prosecute him for a crime other than trying to escape. Right, because the interests of the prison have long since passed because these letters have gone out and now they've been held in the home of the wife. I'm not sure the interests of the prison have long since passed, but they're somewhat different interests. Well, the main interest now is the government wants to read the letters and our position has been all along the privilege exists. It can't be taken away by some balancing approach. And their only remedy that the government has is for a special master to review the letters to decide whether a crime fraud exception applies. I mean, the government can get what they want if they follow the law. And the law is privilege material has to be reviewed in camera and the privilege is only broken if there's a crime fraud exception. Under Murashi, it means that if the husband and wife are planning a criminal act, in other words, pursuing a racketeering act through these letters, then the crime fraud exception breaks the confidential privilege. They can read them. The government wants to read all of them, thousands of pages of letters, and make their own selection, and our point is they can't do that. They only have an interest in getting evidence for their criminal racketeering prosecution, and the only way they can get that evidence is because of the privilege, is through the intervention of an in-camera review by the special master, and that's all we're trying to say. And my last point is that the government is trying to destroy the privilege by saying balancing these interests. And I cited in the reply brief the Jaffe v. Redmond and Upjohn v. United States, where twice the Supreme Court has rejected balancing approaches for destroying privileges. In Upjohn's case, it was a question of whether the corporate lawyers had an attorney-client privilege with the higher-up executives, but not the low-level employees, and the lower courts said, yeah, they don't have an attorney-client privilege with the lower-level employees, and the United States Supreme Court says, no. An attorney-client privilege cannot be destroyed by a balancing approach, and that's what they're trying to do here. In Redmond, they did the same thing. They said, well, sometimes we really need this evidence in these lawsuits against the police. Can't we balance them? The lower courts said, well, of course you can. The United States Supreme Court says, no, you can't. Once the privilege exists, you don't engage in balancing processes to take it away, because if you do, I'm sorry. Thank you, counsel. I think we understand your position, and you've exceeded your time. The case just argued is submitted. We appreciate it.
judges: Graber, McKeown, W. Fletcher